Gregory F. Van Tatenhove, United States District Judge
This matter is before the Court upon Movant Timothy Alexander Conley's petition to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. [R. 153.] Consistent with local practice, this matter was referred to Magistrate Judge Robert E. Wier, who filed a Recommended Disposition recommending that Conley's motion be denied. [R. 159.]
Under Federal Rule of Civil Procedure 72(b)(2), a petitioner has fourteen days after service to register any objections to the recommended disposition or else waive his rights to appeal. In order to receive de novo review by this Court, any objection to the report and recommendation must be specific. Mira v. Marshall , 806 F.2d 636, 637 (6th Cir. 1986). A specific objection "explain[s] and cite[s] specific portions of the report which [counsel] deem[s] problematic." Robert v. Tesson , 507 F.3d 981, 994 (6th Cir. 2007) (citation omitted). A general objection that fails to identify specific factual or legal issues from the report and recommendation, however, is not permitted, since it duplicates the Magistrate's efforts and wastes judicial economy. Howard v. Secretary of Health and Human Services , 932 F.2d 505, 509 (6th Cir. 1991).
Defendant Conley filed timely objections to the Recommended Disposition. [R. 163.] Conley's four objections are sufficiently definite to trigger the Court's obligation to conduct a de novo review. See 28 U.S.C. § 636(b)(1)(c). The Court has satisfied that duty, reviewing the entire record, including the pleadings, the parties' arguments, relevant case law, and statutory authority, as well as applicable procedural rules. For the following reasons, Conley's objections will be OVERRULED .
I
Judge Wier's Recommended Disposition accurately sets forth the factual and procedural background of the case. Below, the Court mentions the key facts to frame its discussion and analysis, but, chooses to incorporate Judge Wier's discussion of the record into this Order.
Mr. Timothy Alexander Conley was indicted, along with two co-defendants, on December 5, 2013, for honest services mail fraud in violation of 18 U.S.C. § 1341, theft or bribery concerning programs receiving federal funds in violation of 18 U.S.C. §§ 666(a)(1)(A) & 2, and conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h). [R. 1.] On August 26, 2014, Conley pled guilty to Count 3, which encompassed a violation of 18 U.S.C. § 1341, honest services mail fraud. [R. 87.] A Presentence Investigation Report ("PSR") was prepared in which Conley's recommended Sentencing Guideline Range was determined to be 70 to 87 months based on a total offense level, subsequent a three-level acceptance of responsibility reduction, of 27 and a criminal history category of I. [R. 134.] The defendant filed no *654 objections to the PSR. [See id. ] Although the Government moved for an upward departure [R. 117], that motion was denied, and on January 27, 2015, the Court sentenced Mr. Conley to 87 months imprisonment followed by three years of supervised release. [R. 127.] Conley filed a timely appeal to the Sixth Circuit Court of Appeals, which subsequently dismissed the appeal on June 2, 2016, because Conley's plea agreement contained a waiver of appeal. [R. 152.] Conley did not file a petition for a writ of certiorari with the United States Supreme Court. [R. 159.]
On September 6, 2016, Conley, through counsel, filed a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. [R. 153.] Conley's motion was referred to Judge Robert E. Wier to review and prepare a Recommended Disposition. Conley based his motion on the overall effect that McDonnell v. United States , --- U.S. ----, 136 S.Ct. 2355, 195 L.Ed.2d 639 (2016), has on his case. [Id. at 1.] Conley did not request, and the Magistrate Judge did not hold, an evidentiary hearing on this motion. [R. 159 at 31.] On February 16, 2017, Judge Wier filed a Recommended Disposition calling for Conley's motion to be denied. [Id. at 32.] Conley filed objections to Judge Wier's Recommended Disposition pursuant to his rights under 28 U.S.C. § 636 (b)(1).[1] [R. 163.]
II
The Court finds that Conley raised four objections to Judge Wier's Recommended Disposition that are adequately specific to trigger de novo review by this Court. See U.S.C. § 636(b)(1)(c); Mira , 806 F.2d at 637. Conley objects to the Magistrate's finding that (A) McDonnell neither applies to the merits of Conley's case nor renders Conley's conviction void; (B) Conley's plea was entered knowingly, voluntarily, and intelligently; (C) Conley did not receive ineffective assistance of counsel prior to his conviction and sentencing; and (D) Conley should not receive a reduction based on an "official acts" sentencing enhancement. [R. 163.] While the objections raised initially formed, without much substantive difference, the basis for Conley's § 2255 Motion, the Court nonetheless addresses Conley's objections in turn.
Before addressing Conley's objections, the Court first analyzes the unraised issue of procedural default. Where a movant fails to raise a claim on direct appeal, the movant is procedurally defaulted from seeking § 2255 relief on that claim. Bousley v. United States , 523 U.S. 614, 621, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) ; Regalado v. United States , 334 F.3d 520, 528 (6th Cir. 2003). A claim that could have been raised on direct appeal, but was not, "may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.' " Bousley , 523 U.S. at 622, 118 S.Ct. 1604 ; Ray v. United States , 721 F.3d 758, 761 (6th Cir. 2013). In attempting to show cause for default, a defendant cannot rely on futility where bringing his claim on direct appeal would have been premature. See *655 Bousley , 523 U.S. at 623, 118 S.Ct. 1604 (citing Engle v. Isaac , 456 U.S. 107, 130 n.35, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982) ("[F]utility cannot constitute cause if it means simply that a claim was 'unacceptable to that particular court at that particular time.' ")). "To establish actual innocence, petitioner must demonstrate that, 'in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him.' " Bousley , 523 U.S. at 623, 118 S.Ct. 1604 (citation omitted). In cases where the Government fails to argue default, as is true here, the Government may forfeit the right to defend on default grounds. Elzy v. United States , 205 F.3d 882, 886 (6th Cir. 2000) (citing Trest v. Cain , 522 U.S. 87, 118 S.Ct. 478, 139 L.Ed.2d 444 (1997) ). Although not required to do so, the Court may, on its own, raise the procedural default question in a habeas context. Elzy , 205 F.3d at 886.
In Conley's appeal to the Sixth Circuit, he did not argue the effects McDonnell had on his case as McDonnell had not yet been decided. See Reply Brief, 2016 WL 2848803, United States v. Conley , No. 15-5148 (6th Cir. May 12, 2016), ECF No. 31. Rather, Conley claimed his plea was entered without a full understanding as to the elements underlying honest services mail fraud, that his attorney at the time of his plea did not understand the elements of honest services mail fraud, and that during the plea colloquy there was never any statement made as to Conley's use of the mail in committing the offense of conviction. Id. at 3-5. While Conley's § 2255 Motion makes neither an argument of cause and actual prejudice, nor an assertion of actual innocence, his Objections to the Magistrate's Recommended Disposition does raise the question of innocence. [R. 163 at 9.] Given the unique posture of the case, the procedural default doctrine raises interesting concerns. However, the Court, like the Magistrate Judge, declines to sua sponte opine on the procedural default issue and, instead, addresses the merits of Mr. Conley's objections.
A
Mr. Conley first objects to Judge Wier's determination that McDonnell neither applies to the merits of Conley's case nor renders Conley's conviction void. [R. 163 at 3.] At the heart of Conley's § 2255 Motion, and his subsequent Objections to the Magistrate's Recommended Disposition, is the definition of "official acts" as that term relates to honest services fraud statutes. Although "official acts" has a statutory definition,[2] the McDonnell Court clarified that definition as follows:
[A]n "official act" is a decision or action on a "question, matter, cause, suit, proceeding, or controversy." The "question, matter, cause, suit, proceeding, or controversy" must involve a formal exercise of governmental power that is similar in nature to a lawsuit before a court, a determination before an agency, or a hearing before a committee. It must also be something specific and focused that is "pending" or "may by law be brought" before a public official. To qualify as an "official act," the public official must make a decision or take an action on that "question, matter, cause, suit, proceeding, or controversy," or agree to do so. That decision or action may include using his official position to exert pressure on another official to perform an *656 "official act," or to advise another official, knowing or intending that such advice will form the basis for an "official act" by another official. Setting up a meeting, talking to another official, or organizing an event (or agreeing to do so)-without more-does not fit that definition of "official act."
136 S.Ct. at 2371-72. Thus, there are two requirements for an official act: (1) "the Government must identify a question, matter, cause, suit, proceeding, or controversy that may at any time be pending or may by law be brought before a public official;" and (2) "the Government must prove that the public official made a decision or took an action 'on' that question, matter, cause, suit, proceeding or controversy, or agreed to do so." McDonnell , 136 S.Ct. at 2368 ; see also 18 U.S.C. § 201(a)(3). The McDonnell Court went to great lengths to provide substantive meaning to the statutory language. As to the first requirement, the Court concluded that § 201(a)(3) requires a "focused and concrete" question, matter, cause, suit, proceeding, or controversy "involve[ing] a formal exercise of governmental power that is similar in nature to a lawsuit, administrative determination, or hearing." Id. at 2370. Regarding the second requirement, the Court determined that § 201(a)(3) requires "that the public official must make a decision or take an action on that question or matter, or agree to do so." Id. (emphasis in original). In satisfying the second requirement, it is enough that "a public official uses his official position to provide advice to another official, knowing or intending that such advice will form the basis for an 'official act' by another official...." Id.
Conley's first objection is, thus, bifurcated. He initially argues that the Government failed to identify a question, matter, cause, suit, proceeding, or controversy that may at anytime be pending or may by law be brought before any public official. [R. 163 at 4.] Conley asserts that "modifying a bid is not a question, matter, cause, suit, proceeding, or controversy," and that "there was no question, matter, cause, suit, proceeding or controversy pending before Conley." [Id. ] Next, Conley argues he never "made a decision or took an action on one of the questions, matters, causes, suits, proceedings, or controversies." [R. 163 at 6.] His theory is that "non-sanctioned, or illegal conduct cannot be an official act under 18 U.S.C. § 201." [Id. ]
1
Mr. Conley contends the Government failed to meet McDonnell 's first prong because it never identified a question, matter, cause, suit, proceeding, or controversy that may at anytime be pending or may by law be brought before any public official. [R. 163 at 4.] At the time the offense was committed, Conley was the Morgan County Judge Executive, and, as such, also a member of the Morgan County Fiscal Court. See [R. 163 at 5]; KRS § 67.040. One responsibility of the Fiscal Court is to oversee the solicitation of bids and the awarding of contracts for certain public construction projects. See [R.159 at 9-10]; KRS § 178.140. The gist of Conley's argument is that his bid-rigging conduct does not qualify as a question, matter, cause, suit, proceeding or controversy because that conduct occurred prior to the bids being submitted to the Fiscal Court for awarding of the contracts. [R. 163 at 4.] Although Conley acknowledges that "[t]he only question that was arguably pending in front of any public official or body was the question of what company would be awarded contracts ...," he argues such a question was pending not before him but before the Morgan County Fiscal Court. [Id. ]
*657 In satisfaction of McDonnell 's first prong, the United States identified a focused and concrete question, matter, cause, suit, proceeding, or controversy that is similar in nature to an administrative determination or hearing. The Government identified as questions, matters, causes, suits, proceedings, or controversies "the bidding on the public project," "[t]he bidding process for bridge construction contracts," and "[t]he selection of the winning bidder for bridge projects." [R. 159 at 9-10.] Additionally, Conley's indictment and plea agreement also outline certain questions, matters, causes, suits, proceedings, or controversies. The indictment identified "the formal process for hiring construction contractors" for Morgan County projects and described the bidding process used to award such contracts. [R. 1.] The plea agreement described the bidding process used by Morgan County in awarding certain bridge construction contracts in 2013. [R. 124 at 2.] Conley, in his plea agreement, admitted to rigging certain bids and submitting the rigged bids under false pretenses to the Morgan County Fiscal Court. [Id. ] The process by which certain public construction contracts were awarded in Morgan County in 2013 constituted a "question, matter, cause, suit, proceeding, or controversy" that may at any time be pending or may by law be brought before a public official. The bidding process and the awarding of the contract was at a time pending before, and by law brought before, the Morgan County Judge Executive and the Morgan County Fiscal Court, which had the final approval authority to award such contracts. Thus, the Government satisfied the first prong of the McDonnell test.
2
Mr. Conley next focuses on the second prong of the McDonnell test arguing he never made a decision or took an action on any question, matter, cause, suit, proceeding, or controversy. [R. 163 at 6.] He contends that "non-sanctioned, or illegal conduct cannot be an official act under 18 U.S.C. § 201." [Id. ] His dispute concentrates heavily on his fraudulent activity of altering a contractor's bid, and asserts that such fraudulent conduct, "by virtue of its fraudulence, cannot ever be performed in an official capacity." [Id. ] For support, Conley looks to McDonnell 's finding that certain acts, "absent an ulterior motive, [are] perfectly acceptable function[s] of Government." [Id. ] Conley also asserts he neither "used his official position to exert pressure on another official to perform an 'official act,' " nor "provide[d] advice or information forming a decisional basis for other officials to award construction projects." [Id. ]
Conley's admitted conduct satisfies the second prong of the McDonnell test as he clearly made a decision or took an action on the "question, matter, cause, suit, proceeding, or controversy." Conley's focus on the rigging of bids as an official act is misplaced. Instead, the official act here is the bidding process and awarding of certain public construction contracts by the Fiscal Court, to whom Conley submitted information that formed the basis for the Fiscal Court's decisions. These activities are generally acceptable governmental functions; however, Conley's ulterior motive of receiving kickbacks from certain contractors who were awarded contracts removes the activity from the category of generally acceptable acts. To be certain, Governor McDonnell and at least one other district court have acknowledged that the awarding of a governmental contract satisfies the pre- and post- McDonnell definitions of an official act. See McDonnell , 136 S.Ct. at 2365 ; United States v. Pomrenke , 198 F.Supp.3d 648, 701 (W.D. Va. 2016). As McDonnell noted, it is enough *658 that "a public official uses his official position to provide advice to another official, knowing or intending that such advice will form the basis for an 'official act' by another official...." 136 S.Ct. at 2370. Conley admitted to selecting and submitting bids to the Morgan County Fiscal Court in order to have certain contracts awarded to PBTHNOJJ Construction, from whom Conley received monetary kickbacks. [R. 124 at 2.] Conley provided the Fiscal Court with the information it needed in order to award those construction contracts. [R. 124 at 2.]
As Judge Executive, Conley was charged with selecting the lowest bidder for construction contracts and presenting those selections to the Fiscal Court for approval and contract award. [See R. 159 at 10; R. 124 at 2; R. 1 at 1-2.] For certain projects, Conley "selected PBTHNOJJ Construction as the lowest bidder and later presented his selection for approval by the Morgan County Fiscal Court." [R. 159 at ----10.] On at least one of those projects, Conley rigged PBTHNOJJ's bid to make it appear to be the lowest submitted bid. [Id. ] Because Conley knew he would receive monetary kickbacks if PBTHNOJJ Construction was awarded the contracts, he provided the information to the Fiscal Court knowing or intending that such advice would form the basis for the Fiscal Court's official act of awarding the contracts to PBTHNOJJ Construction. [R. 124 at 2.] Conley avers that the Fiscal Court was "not required to always select the bids proposed." [R. 163 at 7]; see also KRS 178.140. While the Fiscal Court was free to reject all bids, if it opted to award a contract, it was obligated to award the contract to the lowest bidder meeting certain other statutory requirements. See KRS 178.140(2) ("The contract shall be awarded to the lowest and best bidder, who shall furnish satisfactory security in an amount equal to the amount of the contract in question, to be approved by the county judge/executive of the county.").
Even if McDonnell applies to the merits of Conley's case, habeas relief is not warranted under this objection because the two-prong McDonnell test regarding official acts has been met.[3] First, the Government identified the process by which certain public construction contracts were awarded in Morgan County as a question, matter, cause, suit, proceeding, or controversy that may at any time be pending or may by law be brought before a public official, to wit, the Morgan County Judge Executive and/or the Morgan County Fiscal Court. Second, Conley, as Morgan County Judge Executive, used his official position to provide advice and information, albeit under false pretenses, to the Morgan County Fiscal Court knowing or intending that such advice would form the basis for the Morgan County Fiscal Court's decision to award certain contracts to PBTHNOJJ Construction, from whom Conley received monetary kickbacks. For these reasons, the Court denies § 2255 relief on these grounds.
B
In his second objection, Mr. Conley urges the Court to vacate his *659 conviction because his guilty plea was not entered knowingly, voluntarily, and intelligently. [R. 163 at 8.] The basis of this objection is that his understanding of the law regarding honest services mail fraud was not in line with McDonnell 's subsequent clarification of "official acts," which, when applied to Conley's conduct, exonerates him of honest services mail fraud. [Id. ] Conley argues that because the term "official act" has a specific definition as to an element of honest services mail fraud, and because his understanding of that term was different than the McDonnell definition, his plea was involuntary and unintelligent. [Id. at 8-9.]
A plea of guilty is valid only if, under the totality of the circumstances, the plea is "entered knowingly, voluntarily, and intelligently by the defendant." Brady v. United States , 397 U.S. 742, 748-49, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) ; United States v. Webb , 403 F.3d 373, 378 (6th Cir. 2005). Substantively speaking, "a guilty plea is involuntary where the defendant lacks knowledge of one of the elements required for conviction." In re Hanserd , 123 F.3d 922, 926 (6th Cir. 1997) (citing Henderson v. Morgan , 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976) ). However, as Judge Wier astutely noted, a subsequent legal clarification as to an element of the crime does not, without more, render an otherwise intelligent guilty plea involuntary or invalid. [R. 159 at 23]; see also United States v. Riascos-Suarez , 73 F.3d 616, 622-24 (6th Cir.), cert. denied , 519 U.S. 848, 117 S.Ct. 136, 136 L.Ed.2d 84 (1996), superseded by statute , An Act to Throttle Criminal Use of Guns, Pub. L. No. 105-386, 112 Stat. 3469,as recognized in United States v. Mackey , 265 F.3d 457, 461 (6th Cir. 2001). The subsequent change must be one of such significance that it yields a defendant who pled guilty to conduct that was not a crime. Waucaush v. United States , 380 F.3d 251, 258 (6th Cir. 2004). Additionally, a guilty plea is invalid and unintelligent where "neither [the defendant], nor his counsel, nor the court correctly understood the essential elements of the crime with which [the defendant] was charged." Id. at 258 (quoting Bousley , 523 U.S. at 618, 118 S.Ct. 1604 ).
Conley rests his objection on the McDonnell clarification of an "official act," and argues that, regardless of whether his conduct was criminal, he could not have entered a plea knowingly, voluntarily, and intelligently because he did not understand all of the elements of honest services mail fraud. [R.163 at 8.] During Conley's Rule 11 plea colloquy, the Government articulated the elements of honest services mail fraud as they existed at the time. [R. 136 at 26-27.] When the Court inquired of Mr. Conley whether he thought the Government could prove those elements at a trial, Conley answered in the affirmative. [Id. at 27.] The Court then directed Conley's attention to the more detailed facts outlined in the negotiated plea agreement [R. 124 at 2-3], and asked whether those facts were true. [R. 136 at 27.] After consulting with his attorney, Conley again answered in the affirmative. [Id. ] While it is true that during the Rule 11 colloquy, Conley himself did not articulate with great clarity his conduct in relation to the elements of the charged offense, the Court was satisfied that Conley was "competent and capable of entering an informed plea." [Id. at 33.]
The facts to which Conley admitted, as articulated on the record and outlined in his plea agreement, continue to satisfy the elements of honest services mail fraud, even post- McDonnell. The McDonnell clarification does not take Conley's conduct out of the reach of the honest services mail fraud statute. As stated in the Recommended Disposition, "[a]n elected official *660 taking kickbacks for doctoring bids and shepherding false bids through the procurement process presents conduct not clarified and not in need of clarification by McDonnell. " [R. 159 at 26.] Part of that procurement process, as admitted in the plea agreement and plea colloquy, certainly involved submitting, via mail, requests for state funding from the Kentucky Transportation Cabinet. [R. 124 at 3.] Neither the defendant, nor the attorneys, nor the Court were mistaken as to the elements of honest services mail fraud at the time Conley entered his plea, and Conley's criminal conduct was not made innocent by the McDonnell clarification. As such, Conley's request for § 2255 relief on this ground is denied.
C
Next, Mr. Conley objects to Judge Wier's determination that defense counsel was not ineffective for failing to advise on McDonnell leading up to and during Conley's plea and sentencing. [R. 163 at 9.] Conley argues that his attorney did not properly inform him of the elements the Government would have to prove if Conley went to trial. [Id. at 10.] Although Conley stated his satisfaction with counsel at his sentencing, the subsequent holding in McDonnell rendered that satisfaction void because McDonnell clarified an element of Conley's count of conviction, that being the definition of an "official act," on which Conley was otherwise misinformed. [Id. ] Conley claims that because Governor McDonnell's trial was pending at the time of Conley's plea, Conley's attorney should have advised him that an area of law pertinent to the McDonnell case-and, as Conley argues, his own case-was unsettled. [See id. ] Conley further contends the hesitancy exhibited in his plea colloquy provides evidence as to how he was prejudiced by his counsel's ineffective assistance. [See R. 165 at 2-3.]
In order to prove ineffective assistance of counsel, Conley must demonstrate: (1) counsel's performance was deficient; and (2) he was prejudiced by the deficient assistance so as to render his trial unfair. See Strickland v. Washington , 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) ; Campbell v. Bradshaw , 674 F.3d 578, 586 (6th Cir. 2012). For Conley to establish Strickland prejudice in the context of his guilty plea, he "must show the outcome of the plea process would have been different with competent advice." See Lafler v. Cooper , 566 U.S. 156, 163, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012). A defendant may show prejudice "by demonstrating a 'reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.' " Lee v. United States , --- U.S. ----, 137 S.Ct. 1958, 1965, 198 L.Ed.2d 476 (2017) (quoting Hill v. Lockhart , 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) ). However, as several Sixth Circuit cases have noted, failure to anticipate or predict a future Supreme Court decision or holding does not, without more, satisfy the Strickland analysis. See Thompson v. Warden , 598 F.3d 281, 288 (6th Cir. 2010) ; Nichols v. United States , 563 F.3d 240, 253 (6th Cir. 2009) (en banc ); United States v. Burgess , 142 Fed.Appx. 232, 240 (6th Cir. 2005).
As Judge Wier noted in his Recommended Disposition, Conley failed to satisfy Strickland 's two-prong test for ineffective assistance of counsel; Conley neither demonstrated that his counsel was deficient, nor established that he suffered prejudice as a result of his deficient counsel. [R. 159 at 28-30.] Conley acknowledges that McDonnell's case was proceeding through trial at the time Conley entered his plea, and that Conley's *661 pretrial counsel was "not expected to be a fortune-teller." [R. 163 at 10.] However, Conley claims his attorney should have had "knowledge of significant cases that [were] pending," and "[a]t a minimum ... should have advised him that this area of the law was unsettled." [Id. ] Governor McDonnell had not yet been sentenced when Conley pled guilty and the undersigned sentenced Conley.[4] Thus, Conley could not have relied on McDonnell in any proceeding leading up to his sentencing. Because McDonnell had not been decided at the time Conley was sentenced, Conley's objection requires that his pretrial counsel predict not only the outcome of McDonnell's criminal trial, but also the result of any and all subsequent appellate proceedings. Following this Circuit's precedent, the effectiveness of Conley's pretrial counsel will not be adjudged for failing to predict or anticipate a subsequent development in the law. Thus, Conley fails to show his trial counsel was deficient.
Conley attempts to establish prejudice and show a potential different outcome by relying on Lee v. United States , --- U.S. ----, 137 S.Ct. 1958, 198 L.Ed.2d 476 (2017). Conley's states that "in light of the Supreme Court's subsequent opinion in McDonnell , it is clear that Conley's counsel did not correctly advise him of what the Government had to prove to attain a conviction at trial." [R. 163 at 10.] Conley argues that his plea and sentencing colloquies provide ample proof of prejudice in that he was hesitant to enter his guilty plea, and, at sentencing, he felt like "a volleyball in a world of two teams that wants to win." [R. 165 at 2-3.] Conversely, in Lee , trial counsel repeatedly and incorrectly advised the defendant that pleading guilty would not result in deportation. Lee , 137 S.Ct. at 1963. Lee provided "substantial and uncontroverted evidence" that "deportation was the determinative issue in ... whether to accept the plea," and that he would not have pled guilty had he known that deportation was a consequence of such a plea. Id. at 1963, 1968. The Court noted that "[d]eportation is always 'a particularly severe penalty.' " Id. at 1968 (quoting Padilla v. Kentucky , 559 U.S. 356, 365, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010) ). The Court concluded that Lee showed by a "reasonable probability that, but for his counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 1969 (quoting Hill , 474 U.S. at 59, 106 S.Ct. 366 ).
Conley's arguments fall short of the "substantial and uncontroverted evidence" provided in Lee and the "reasonable probability" standard established in Hill. Other than merely claiming prejudice, Conley fails to concretely establish that an area of law subsequently decided in McDonnell was either determinative in his case or would result in a particularly severe penalty to him. See Lee , 137 S.Ct. at 1963, 1968. Instead, Conley asserts only that "he saw no other option" than to plead guilty, and that "had he truly understood the nature of the charges against him he would have proceeded to trial." [R. 165 at 3.] Conley's claims fail to show a "reasonable probability that, but for his counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." See Hill , 474 U.S. at 59, 106 S.Ct. 366. As such, *662 Conley does not establish that "the outcome of [his] plea process would have been different with competent advice." See Lafler , 566 U.S. at 163, 132 S.Ct. 1376.
Because Conley neither establishes that his defense counsel was deficient, nor shows that he was so prejudiced by deficient representation as to render his trial unfair, the Court overrules this objection and denies habeas relief on the claim of ineffective assistance of counsel.
D
Finally, Mr. Conley calls for the Court to reduce his sentence because the "official acts" sentencing enhancement was improperly applied in his case. [R. 163 at 11.] In support of this argument, Conley states, "[n]ow that McDonnell has limited the scope of actions which constitute 'official acts,' Conley no longer qualifies" for the four-level official acts enhancement.[5] [Id. ]
As noted by Judge Wier, Conley neither specifies which Guideline allows for an official acts enhancement, nor establishes where in the record such an enhancement was applied to his sentencing guideline calculation. [R. 159 at 30, n.20.] The Court has reviewed Conley's Presentence Investigation Report.[6] [R. 134]. Conley correctly states his total offense level was calculated to be 27; however, he incorrectly claims a four-level official acts enhancement was part of that calculation. [R. 163 at 11.] The only four-level enhancement applied to his guideline calculation is under U.S.S.G. § 2C1.1(b)(3) because the offense involved an elected public official. While it is true, based on the Background Commentary to § 2C1.1, a criminal defendant may receive a four-level enhancement under § 2C1.1(b)(3) where a payment is made "for the purpose of influencing an official act by certain officials," that is not the reason for the enhancement in Conley's case. Conley, as Morgan County Judge Executive, was an elected public official. As such, Conley received the four-level enhancement under the plain language of § 2C1.1(b)(3) because his offense involved an elected public official. The Court therefore denies § 2255 relief on this ground.
III
In conclusion, after reviewing de novo the entire record, as well as the relevant case law and statutory authority, the Court agrees with Judge Wier's analysis of Conley's claims. The Court also denies a certificate of appealability pursuant to 28 U.S.C. § 2253(c) as to each issue asserted. Under Rule 11 of the Federal Rules Governing § 2255 Proceedings, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant...." A certificate of appealability may issue "only if *663 the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As set forth by the United States Supreme Court, this standard requires the petitioner to "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel , 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000) ; see also Miller-El v. Cockrell , 537 U.S. 322, 336, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003). Under this standard, the Court believes that this Order, which adopts and incorporates by reference the Magistrate Judge's Recommendation, is not debatable enough to issue a certificate of appealability. Accordingly, and the Court being otherwise sufficiently advised, it is hereby ORDERED as follows:
1. Defendant/Movant Conley's Objections to the Recommended Disposition [R. 163 ] are OVERRULED ;
2. The Magistrate Judge's Recommended Disposition [R. 159 ] is ADOPTED as and for the opinion of this Court;
3. The Defendant's § 2255 Petition [R. 153 ] is DISMISSED WITH PREJUDICE ;
4. A Certificate of Appealability is DENIED as to all issues raised by the Defendant; and
5. JUDGMENT in favor of the Respondent will be entered contemporaneously herewith.
RECOMMENDED DISPOSITION
Robert E. Wier, United States Magistrate Judge
Tim Conley admitted paradigmatic local-government corruption: in exchange for receiving kickbacks, he, as Morgan County Judge/Executive, favorably altered PBTHNOJJ Construction project bids and presented those bids to the Morgan County Fiscal Court for approval.[1] When PBTHNOJJ got a contract, as the (manipulated) low bidder, Conley got a kickback, wrongfully siphoning public tax dollars, through this scheme, into his own pocket. Although Conley agreed not to bring a collateral attack against the federal conviction, he now mounts this 28 U.S.C. § 2255 challenge. He argues (essentially) that his conduct, because it was fraudulent or illegal, could not be an "official act" under the Supreme Court's recent guidance in McDonnell v. United States , --- U.S. ----, 136 S.Ct. 2355, 195 L.Ed.2d 639 (2016), requiring the Court to vacate the conviction. For the reasons that follow, the Court rejects Conley's arguments and, accordingly, RECOMMENDS that the District Judge fully DENY § 2255 relief (DE # 153) and issue NO Certificate of Appealability.
I. BACKGROUND INFORMATION
On December 5, 2013, a grand jury indicted Conley (then Morgan County Judge/Executive; now a federal inmate), along with two co-Defendants, on four counts of violating 18 U.S.C. § 1341, one count of violating § 666(a)(1)(A) and § 2, and one count of violating § 1956(h). DE # 1 (Indictment). Conley pleaded guilty to Count 3 (a § 1341 honest services mail fraud charge), pursuant to a plea agreement, on August 26, 2014. DE ## 87 (Rearraignment Minute Entry); 124 (Plea Agreement); 89 (Sealed Supplement). Judge Van Tatenhove sentenced Conley on January 27, 2015. DE # 126 (Sentencing *664 Minute Entry). Movant received a prison sentence of 87 months, followed by 3 years of supervised release. DE # 127 (Judgment). Conley appealed; the Sixth Circuit dismissed the appeal based on the appellate-waiver provision of the Plea Agreement. DE # 152 (Sixth Circuit Order). On September 6, 2016, Conley timely submitted, through counsel, a § 2255 motion to vacate. DE # 153. The Government responded in opposition. DE # 157. Conley replied. DE # 158. The matter is ripe for consideration. Per normal practice, the District assigned the matter to the undersigned for a recommended disposition. The Court wholly rejects Movant's claims and recommends dismissal. No basis exists for a Certificate of Appealability.
II. STANDARD OF REVIEW
Under 28 U.S.C. § 2255, a federal prisoner may obtain post-conviction relief if his sentence violates the Constitution or federal law, the federal court lacked jurisdiction to impose such sentence, or the sentence exceeds the maximum authorized by law. 28 U.S.C. § 2255(a) ; Mallett v. United States , 334 F.3d 491, 496-97 (6th Cir. 2003) ("In order to prevail upon a § 2255 motion, the movant must allege as a basis for relief: '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.' " (quoting Weinberger v. United States , 268 F.3d 346, 351 (6th Cir. 2001) )). A defendant alleging a constitutional basis must establish "an error of constitutional magnitude" and show that the error had a "substantial and injurious effect or influence on the proceedings" in order to obtain § 2255 relief. Watson v. United States , 165 F.3d 486, 488 (6th Cir. 1999) (citing Brecht v. Abrahamson , 507 U.S. 619, 113 S.Ct. 1710, 1721-22, 123 L.Ed.2d 353 (1993) ). When alleging a non-constitutional error, a defendant must prove that the error constituted a " 'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." United States v. Ferguson , 918 F.2d 627, 630 (6th Cir. 1990) (quoting Hill v. United States , 368 U.S. 424, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962) ); see also Watson , 165 F.3d at 488. In making a § 2255 motion, a movant generally bears the burden of proving factual assertions by a preponderance of the evidence. McQueen v. United States , 58 Fed.Appx. 73, 76 (6th Cir. 2003) (per curiam ) ("Defendants seeking to set aside their sentences pursuant to 28 U.S.C. § 2255 have the burden of sustaining their contentions by a preponderance of the evidence.").
III. ANALYSIS
In his § 2255 motion, Conley raises a variety a claims centering on the alleged impact or effect of McDonnell v. United States , --- U.S. ----, 136 S.Ct. 2355, 195 L.Ed.2d 639 (2016), on the case. Generally speaking, the claims are that (1) McDonnell applies on the merits to Conley and renders his conviction void; (2) in light of McDonnell , Conley's plea was not knowing and voluntary; (3) Conley's plea agreement collateral-attack waiver does not bar this collateral attack; (4) trial counsel rendered ineffective assistance by not anticipating and advising Conley of McDonnell ; and (5) alternatively, McDonnell renders void any "official acts" sentencing enhancement, requiring resentencing. All theories conclusively fail under 28 U.S.C. § 2255.[2]
*665 Before proceeding, the Court generally comments on its handling of Conley's claims. The Government raises Conley's collateral-attack waiver as the first reason to dismiss the § 2255 motion. See DE # 157, at 5-8. Due to the interconnectedness of Conley's claims (for instance, the continued validity of the plea agreement waiver (already enforced in the appellate context by the Sixth Circuit) depends upon the knowing and voluntary nature of the plea, which Conley also attacks through merits application of McDonnell ), the Court perceives the motion to fairly require assessment of McDonnell 's substantive application to Conley's case.[3] The Court thus proceeds with an appropriate and plenary analysis.
A. McDonnell's Impact
Conley, a former Morgan County Judge/Executive, stands convicted by his own admission of honest services mail fraud, in violation of 18 U.S.C. § 1341. In his plea agreement, Conley waived the right to appeal, but he appealed nevertheless. The Sixth Circuit found the appellate-waiver knowing and voluntary and accordingly enforced it, dismissing Conley's appeal on June 2, 2016. DE # 152. Less than a month later, on June 27, 2016, the Supreme *666 Court issued its opinion in McDonnell , which treated 18 U.S.C. § 201 as defining the honest services crime and addressed the meaning of the requisite "official act." 136 S.Ct. at 2367-72. The Court assumes without deciding (especially in light of the Government not disputing the premise, in this ably-briefed case) that because Conley's conviction was not final at the time of McDonnell 's issuance,[4] McDonnell properly applies here. E.g. , United States v. Booker , 543 U.S. 220, 125 S.Ct. 738, 769, 160 L.Ed.2d 621 (2005) (applying "both the Sixth Amendment holding and our remedial interpretation of the Sentencing Act ... to all cases on direct review"); Griffith v. Kentucky , 479 U.S. 314, 107 S.Ct. 708, 716, 93 L.Ed.2d 649 (1987) ("[A] new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final[.]").[5] A case is not "final," for example, until "the time for a petition for certiorari elapse[s.]" Id. at 712 n.6. Other courts, in analogous contexts, have proceeded similarly. Becker , 502 F.3d at 128 ; English , 42 F.3d at 479 ; see also English , 42 F.3d at 485 & 485 n.1 (Browning, J., concurring).
The Indictment charged that Conley "devised and intended to devise a scheme and artifice to defraud, to obtain money and property by means of materially false and fraudulent pretenses, and to deprive Morgan County and its citizens of their right to [his] honest and faithful services ... through bribery, kickbacks, and the concealment of material information hereto[.]" DE # 1, at 2-3. "Honest services mail fraud requires the government to prove that the defendant used the mail to carry out a scheme or artifice to defraud another of the intangible right of honest services. That intangible right covers only schemes in which the defendant participates in a bribery or kickback scheme, which requires an agreement to receive something of value in exchange for an official act." United States v. Dimora , 750 F.3d 619, 626-27 (6th Cir. 2014) (internal quotation marks, citations, and alterations removed). "[T]he term 'official act,' " in turn, as the parties here agree, and per McDonnell , "means any decision or action on any question, matter, cause, suit, proceeding or controversy, which may at any time be pending, or which may by law be brought before any public official, in such official's official capacity, or in such official's place of trust or profit." 18 U.S.C. § 201(a)(3).
McDonnell[6] adopted a "bounded interpretation of 'official act.' "
*667 136 S.Ct. at 2368. "The text of § 201(a)(3) sets forth two requirements for an 'official act': First, the Government must identify a 'question, matter, cause, suit, proceeding or controversy' that 'may at any time be pending' or 'may by law be brought' before a public official. Second, the Government must prove that the public official made a decision or took an action 'on' that question, matter, cause, suit, proceeding, or controversy, or agreed to do so." Id.[7]
On the first requirement, the words "cause, suit, proceeding or controversy" "connote a formal exercise of governmental power, such as a lawsuit, hearing, or administrative determination." Id. A "question" or "matter," though more general verbiage, "must be similar in nature to a 'cause, suit, proceeding or controversy.' " Id. at 2369. Next, the terms "pending" or "may at law be brought" "suggest something that is relatively circumscribed-the kind of thing that can be put on an agenda, tracked for progress, and then checked off as complete." Id. "In particular, 'may by law be brought' conveys something within the specific duties of an official's position-the function conferred by the authority of his office. The word 'any' conveys that the matter may be pending either before the public official who is performing the official act, or before another public official." Id. Overall, the pertinent "question, matter, cause, suit, proceeding or controversy" must be "focused and concrete" and involve "a formal exercise of governmental power that is similar in nature to a lawsuit, administrative determination, or hearing." Id. at 2370.
Regarding the second requirement, an act is not necessarily a "decision or action on" a topic "even if" or merely because it "is related to a pending question or matter." McDonnell , 136 S.Ct. at 2370. "Instead, something more is required"-"the public official must make a decision or take an action on that question or matter, or agree to do so." Id. (emphasis in original). However, a "public official may also make a decision or take an action on a 'question, matter, cause, suit, proceeding or controversy' by using his official position to exert pressure on another official to perform an 'official act.' In addition, if a public official uses his official position to provide advice to another official, knowing or intending that such advice will form the basis for an 'official act' by another official, that too can qualify as a decision or action for purposes of § 201(a)(3)." Id. (emphasis in original). Indeed, "a public official is not required to actually make a decision or take an action on a 'question, matter, cause, suit, proceeding or controversy'; it is enough that the official agree to do so. The agreement need not be explicit, and the public official need not specify the means that he will use to perform his end of the bargain. Nor must the public official in fact intend to perform the 'official act,' so long as he agrees to do so." Id. at 2370-71 (citation removed).
The Supreme Court then applied these principles to Governor McDonnell:
Setting up a meeting, hosting an event, or calling an official (or agreeing to do so) merely to talk about a research study or to gather additional information, however, does not qualify as a decision or action on the pending question of whether to initiate the study. Simply expressing support for the research study at a meeting, event, or call-or sending a subordinate to such a meeting, *668 event, or call-similarly does not qualify as a decision or action on the study, as long as the public official does not intend to exert pressure on another official or provide advice, knowing or intending such advice to form the basis for an 'official act.' Otherwise, if every action somehow related to the research study were an 'official act,' the requirement that the public official make a decision or take an action on that study, or agree to do so, would be meaningless.
136 S.Ct. at 2371. The Court concluded:
In sum, an 'official act' is a decision or action on a 'question, matter, cause, suit, proceeding or controversy.' The 'question, matter, cause, suit, proceeding or controversy' must involve a formal exercise of governmental power that is similar in nature to a lawsuit before a court, a determination before an agency, or a hearing before a committee. It must also be something specific and focused that is 'pending' or 'may by law be brought' before a public official. To qualify as an 'official act,' the public official must make a decision or take an action on that 'question, matter, cause, suit, proceeding or controversy,' or agree to do so. That decision or action may include using his official position to exert pressure on another official to perform an 'official act,' or to advise another official, knowing or intending that such advice will form the basis for an 'official act' by another official. Setting up a meeting, talking to another official, or organizing an event (or agreeing to do so)-without more-does not fit that definition of 'official act.'
Id. at 2371-72.
Conley's admitted conduct in this case fits squarely, indeed inarguably, within McDonnell 's conceptualization of "official acts." Accordingly, McDonnell does not compel vacation of or in any way affect Conley's conviction.
First -the Government identified a "question, matter, cause, suit, proceeding or controversy" that "may at any time be pending" or "may by law be brought" before any public official. The United States specifically identified "the bidding on the public project," "[t]he bidding process for bridge construction contracts," and "[t]he selection of the winning bidder for bridge projects." DE # 157, at 8, 9. The Government further recounted that Conley "presented modified PBTHNOJJ bids to the Fiscal Court as the winning bids on bridge projects"-i.e. , he "receiv[ed] bids for public projects, open[ed] them, and present[ed] the winner to the Fiscal Court." Id. at 8. Conley admitted the conduct; he confessed "rigging purportedly competitive bidding processes in order to ensure the appearance that PBTHNOJJ Construction submitted the lowest bids for certain Morgan County construction projects. After rigging these bids, [he] then secured approval from the Morgan County Fiscal Court under the fraudulent pretenses that these bidding processes were fair and competitive." DE # 124, at ¶ 3(b).[8] Conley fully admitted, in one example, "open[ing] ... bids outside of public view and alter[ing] PBTHNOJJ Construction's bid prices, to ensure that they appeared slightly lower than the other contractor's bid prices." Id. at ¶ 3(c). Conley "selected PBTHNOJJ Construction as the lowest bidder and later presented his selection for approval by *669 the Morgan County Fiscal Court." Id.[9]
These specific topics-government-funded construction project bid acceptance, consideration, and approval-unquestionably fit within McDonnell 's framework. Surely, nothing is more concrete than concrete, and the bid process addressed the ultimate decision to spend public monies for specific, tangible construction projects. The projects qualify as "question[s], matter[s], cause[s], suit[s], proceeding[s] or controvers[ies]" because they are "focused and concrete" and involve "a formal exercise of governmental power that is similar in nature to a lawsuit, administrative determination, or hearing." McDonnell , 136 S.Ct. at 2370. The topics at issue further implicate specific examples of Conley's behavior (opening and altering submitted PBTHNOJJ bids "to ensure that they appeared slightly lower than" other contractors' bids and submitting the bids to the Fiscal Court for approval) and a specific company with which Conley partnered (PBTHNOJJ Construction). See also DE # 1, at 5 (Indictment Count 3, listing the particulars). This easily falls under the degree of focus and concreteness the Supreme Court approved in McDonnell. See 136 S.Ct. at 2370 (approving "(1) 'whether researchers at any of Virginia's state universities would initiate a study of Anatabloc'; (2) 'whether the state-created Tobacco Indemnification and Community Revitalization Commission' would 'allocate grant money for the study of anatabine'; and (3) 'whether the health insurance plan for state employees in Virginia would include Anatabloc as a covered drug' " as "questions or matters under § 201(a)(3)" and "focused and concrete"). Whether the Morgan County Fiscal Court would formally accept a bid from and award a public construction contract to PBTHNOJJ, or another company, similarly fits.
These topics also clearly involve "a formal exercise of governmental power that is similar in nature to a lawsuit, administrative determination, or hearing." Conley admitted to "secur[ing] approval from the Morgan County Fiscal Court" for the rigged bids as well as to "select[ing] PBTHNOJJ Construction as the lowest bidder and later present[ing] his selection for approval by the Morgan County Fiscal Court." The Fiscal Court's consideration and approval of construction bids obviously is "a formal exercise of governmental power" similar to an administrative determination or a hearing.[10] See KRS 178.140 ;
*670 McDonnell , 136 S.Ct. at 2370 (approving qualification, under this prong, of " 'whether the state-created Tobacco Indemnification and Community Revitalization Commission' would 'allocate grant money for the study of anatabine' "); United States v. Pomrenke , 198 F.Supp.3d 648, 701 (W.D. Va. 2016) ("The award of a contract by a public entity is 'a formal exercise of governmental power,' similar in nature to 'a lawsuit, hearing, or administrative determination.' ... [W]hile the BVU Board of Directors may have had final approval over contracts, Pomrenke possessed the real power, along with her co-conspirator Rosenbalm, to decide who did business with BVU."); Jones , 207 F.Supp.3d at 581-82 (finding two "questions or matters": "(1) whether to use official law enforcement authority to cause Verizon to produce text messages belonging to Defendant's wife; and (2) whether to use official law enforcement authority and discretion to disclose Defendant's wife's text messages to Defendant in his capacity as a private citizen"); id. ("[O]btaining text messages and then disclosing them to a third-party falls squarely within the specific duties of a TFO for the FBI.").
Additionally, each question, matter, cause, suit, proceeding or controversy here was "pending" or "may by law [have been] brought before" Conley, or another public official, in his "official capacity." The circumstances here are precisely what the Supreme Court envisioned in McDonnell -"the kind of thing that can be put on an agenda, tracked for progress, and then checked off as complete." 136 S.Ct. at 2369. The construction-project bid submission, consideration, and selection process has all these hallmarks: it depends on deadlines, is put on the Fiscal Court's formal agenda, can be tracked for progress (by Fiscal Court members, the bid applicants, and concerned members of the public), and can finally be checked off as complete upon final approval of a bid. The matters properly pended before Conley in his official capacity as Judge/Executive and a member of the Fiscal Court. See Ky. Const. § 144 ; KRS 178.140, 67.710, 67.710(3), 67.710(6), 67.080(2)(a) & (b).
Second -Conley made a decision or took an action on one of these questions, matters, causes, suits, proceedings or controversies. He admitted as much: he "rigg[ed] purportedly competitive bidding processes," "selected PBTHNOJJ Construction as the lowest bidder," affirmatively and under "false pretenses" "presented" rigged bids to the Fiscal Court "for approval," and actively "secured approval from the Morgan County Fiscal Court[.]" DE # 124, at ¶¶ 3(b)-(c). These are all decisional steps "within ... the function conferred by the authority of his office." McDonnell , 136 S.Ct. at 2369. Additionally, Conley qualifies under the "decision or action on" prong utilizing the alternative method-he "us[ed] his official position to exert pressure on another official to perform an 'official act' " or "to provide advice to another official, knowing or intending that such advice will form the basis for an 'official act' by another official[.]" Id. at 2370 (emphasis in original).[11]
*671 Conley unquestionably qualifies under this analysis. He used his position as Judge/Executive and member of the Fiscal Court to exert pressure on or provide advice or information forming a decisional basis for other officials (other Fiscal Court members) to award construction projects via rigged bids. DE # 124, at ¶ 3(c) (Conley admitting he "presented his selection for approval by the Morgan County Fiscal Court" (emphasis added)); see Birdsall , 34 S.Ct. at 514 (holding that Birdsall "giv[ing] money to Brents and Van Wert ... so that they would advise the Commissioner of Indian Affairs, contrary to the truth that upon facts officially known to them leniency should be granted to the persons who had been convicted and sentenced" fell within the scope of "official act"). McDonnell fully endorsed that Birdsall, by supplying false clemency information, made or took "a decision or action to advise another official on the pending question whether to grant leniency." 136 S.Ct. at 2371 (emphasis in original). Being a deceitful cog in the decisional machine is enough, per Birdsall. Conley was that and more.
Conley also admitted to "secur[ing] approval from the Morgan County Fiscal Court under the fraudulent pretenses that these bidding processes were fair and competitive." Id. at ¶ 3(b). This likewise fits within McDonnell 's approved scope. See, e.g. , United States v. Greenhut , No. 2:15-cr-477-CAS-1, 2016 WL 6652681, at *5 (C.D. Cal. Nov. 8, 2016) ("The government's purchase of office supplies falls squarely within McDonnell 's construction of the term 'official act.' ... Deciding who does business with the government constitutes a formal exercise of power. The Court further finds that the evidence presented at trial was sufficient to conclude *672 that the decision to purchase of [sic] office supplies is a 'pending' question or matter that 'may be brought' before an official because purchasing office supplies is within the specific duties of government supply technicians." (citation removed)); United States v. Bills , No. 14 CR 135-1, 2016 WL 4528075, at *3 (N.D. Ill. Aug. 29, 2016) ("Here, not only did Bills set up meetings, he also actively assisted Redflex with its RFP by providing Redflex with insider information regarding the selection criteria and provided Redfex [sic] with invaluable insight on how to present its proposal, and then advocated to the City to accept the RFP by influencing other members of the Selection Committee and personally voting for Redflex's proposal[.] ... Bills actively took numerous actions to Redflex's benefit in exchange for bribes, including voting for Redflex's RFP in 2003 as a member of the selection committee, participating in contract negotiations to Redflex's benefit, and then, after Redflex won the contract, working to expand Redflex's contract to a sole source contract.").
Other case law interpreting McDonnell supports the Court's conclusion on McDonnell / § 201(a)(3) qualification here. For example, a legislator merely "proposing legislation" is an official act after McDonnell (so self-evident, according to the Second Circuit, that "[n]o reasonable jury could fail to find" it). United States v. Stevenson , 660 Fed.Appx. 4, 7 n.1 (2d Cir. 2016). If an Assemblyman, by simply proposing a piece of legislation, takes an action on a question, matter, cause, suit, proceeding or controversy within the meaning of McDonnell , even though he ultimately could not unilaterally control whether the legislation became law, Judge/Executive Conley submitting a bid he rigged for approval to the Morgan County Fiscal Court surely also qualifies. Similarly, if a top official of a public utility's actions regarding "[t]he award of a contract" qualifies, Conley's (also involving a public entity's award of construction contracts) likewise neatly fits. See Pomrenke , 198 F.Supp.3d at 700-03. The same principle holds regarding an individual "providing ... invaluable insight" to a company seeking a city contract, "advocat[ing] to the City to accept" that company's proposal, and "influencing other members of the Selection Committee[.]" See Bills , 2016 WL 4528075, at *3. Conley presents squarely analogous facts. As one court cogently explained: "Deciding who does business with the government constitutes a formal exercise of power." Greenhut , 2016 WL 6652681, at *5. If the mere "purchase of office supplies" counts under this analysis after McDonnell , see id. , Conley's actions regarding the fraudulent consideration and award of government construction contracts clearly also qualify. Conley's formal hand in the concrete public construction projects is a far cry from the marginal activities of the McDonnell clan, merely "[s]etting up a meeting, talking to another official, or organizing an event[.]" McDonnell , 136 S.Ct. at 2372.
Conley's argument to the contrary-a too-criminal-to-be-criminal theory-is unpersuasive. In essence, Conley claims that bid rigging, because it is fraudulent, "cannot ever be performed in an official capacity" and thus is categorically outside the reach of § 201(a)(3). DE # 153-1, at 14; see also id. ("[I]llegal conduct cannot be an official act[.]"). The Court rejects this remarkable theory out of hand.
First, it ignores a large swath of Conley's admitted conduct: not only did he rig bids, but he then, in his capacity as a member of (and the executive of) the Fiscal Court, presented the bids, without divulging he had rigged them, to the Fiscal Court "for approval." DE # 124, at ¶¶ 3(b)-(c). Thus, even ignoring Conley's fraudulent bid altering, presenting bids for Fiscal *673 Court approval unquestionably counts among Conley's official duties.
More fundamentally, the argument suffers at root from using the wrong frame of reference. The question is not (in Conley's specious formulation) whether committing fraud or other illegality itself falls within a public official's official duties. No official has fraud as a job function. The question-which Conley fails to perceive-is whether "any decision or action" of the official-fraudulent or not-is "on" a "question, matter, cause, suit, proceeding or controversy" that may be pending or lawfully brought before any official in his "official capacity." See 18 U.S.C. § 201(a)(3) (emphasis added). The underlying question, matter, cause, suit, proceeding, or controversy must be before the official in his official capacity (as the construction-bidding process was for Conley and the Fiscal Court), and the official need only make or take "any decision or action on" that topic (as Conley did by doctoring bids and submitting them to the Fiscal Court for approval). See Valdes v. United States , 475 F.3d 1319, 1324 (D.C. Cir. 2007) (en banc ) (describing the "official capacity" clause as applying only to the "question or matter" component-not the "decision or action" requirement); United States v. Parker , 133 F.3d 322, 326 (5th Cir. 1998) ("Because the [matters at issue] were pending in [Defendant's] 'place of trust or profit,' her actions fall within the statutory definition of 'official act.' "). Simply put, an "official act" may indeed "violate an official's official duty[.]" Parker , 133 F.3d at 326 (approving Parker's "fraudulent[ ] approv[al of Social Security] benefits," "alter[ation] and forge[ry of] the decisions," and "creat[ion of] fictitious letters approving benefits" as "official acts"). Recall that the "official act" definition is not, itself, the crime. McDonnell cited § 201(b)(2) for the guts of the offense, describing as the crime for " 'a public official or person selected to be a public official, directly or indirectly, corruptly' to demand, seek, receive, accept, or agree 'to receive or accept anything of value' in return for being 'influenced in the performance of any official act.' " McDonnell , 136 S.Ct. at 2365 (quoting § 201(b)(2) ). Conley did abuse his position, but each act he took was, though unauthorized, "within ... the function conferred by the authority of his office." Id. at 2369.
Additionally, as just suggested, case law harmoniously rejects Conley's argument. See, e.g. , United States v. Halloran , 664 Fed.Appx. 23, 27-29 (2d Cir. 2016) (applying McDonnell and upholding convictions where Defendant Smith illegally agreed "to help allocate state funds" concerning real estate projects and road improvements: "The jury could properly conclude that this evidenced an agreement to take official action in exchange for payment of ... bribes."); Parker , 133 F.3d at 326 ("We therefore hold that the term 'official act' encompasses use of governmental computer systems to fraudulently create documents ..., even when the employee's scope of authority does not formally encompass the act ." (emphasis added)); cf. Valdes , 475 F.3d at 1325 (holding "official acts" encompass "inappropriate influence on decisions that the government actually makes"). Indeed, courts routinely hold that wrongful and illegal actions qualify under this analysis, even post- McDonnell.[12] See, e.g. , *674 Pomrenke , 198 F.Supp.3d at 700-03 ; Bills , 2016 WL 4528075, at *3 ; Greenhut , 2016 WL 6652681, at *5 ; Halloran , 664 Fed.Appx. at 27-29. If Birdsall's bribed procurement of false clemency advice counted, over 100 years ago, see Birdsall , 34 S.Ct. at 514 ("Birdsall ... g[a]ve[ ] money to Brents and Van Wert with intent to influence their official action so that they would advise the Commissioner of Indian Affairs, contrary to the truth[.]"), Conley's creation (through bid rigging) and dissemination (through presentation to the Fiscal Court) of false information in public contracting also counts. Tellingly, Conley cites no case adopting or supporting his novel theory. See DE # 153-1, at 14-17.
Conley's formulation, that only a valid and legal act by an official can be an official act, would spare from prosecution the worst of public fraudsters. The deceptive, false, or fraudulent public management and contracting practices of officials would avoid scrutiny as occurring outside the "proper" duties of the officials. This was not the law before McDonnell and is not the law now. Indeed, the very focus of the honest services statute is the corruptly purchased official action of governmental officials. By definition, the crime must involve an official act tainted by influence. Conley sold his de jure executive power and influence over the contracting process-his ability to make decisions or take actions on the bidding process-to the conspiring bidder. This was and produced activity outside the proper judge/executive role, as any corruptly influenced decision would be, but the wrongful nature of the behavior is exactly what makes it criminal. If Conley could avoid § 1341 prosecution by showing his acts were unauthorized, the statute would be toothless for the most central and powerful of governmental fraud actors. The District Court should deny § 2255 relief on this ground.
B. Conley's Plea
Conley next raises a separate, but connected, argument concerning the validity of his plea. Movant argues that, "even if" his conduct falls within McDonnell 's scope, he "was entitled to understand the elements of the charges facing him before pleading guilty." DE # 153-1, at 13-14, 17-18. The parties identify the central cases on this topic and ably argue their respective positions.[13]
To be valid, of course, a plea must be "entered knowingly, voluntarily, and intelligently by the defendant." United States v. Webb , 403 F.3d 373, 378 (6th Cir. 2005). Nearly 50 years ago, the Supreme Court cautioned that "a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise." Brady v. United States , 397 U.S. 742, 90 S.Ct. 1463, 1473, 25 L.Ed.2d 747 (1970). The Supreme Court later, though, emphasized the limits of Brady 's holding-the case involved a defendant who "attempted to challenge [his] guilty plea[ ] when it became evident that [he] had misjudged the strength of the Government's case or *675 the penalties to which [he] w[as] subject," not one who was incorrectly informed "as to the essential nature of the charge against him." Bousley v. United States , 523 U.S. 614, 118 S.Ct. 1604, 1609, 140 L.Ed.2d 828 (1998). To the contrary, if "neither [Defendant], nor his counsel, nor the court correctly understood the essential elements of the crime with which he was charged," Defendant's "plea would be ... constitutionally invalid." Id. ; see also, e.g. , United States v. Johnson , 410 F.3d 137, 152 (4th Cir. 2005) (summarizing interplay between Brady and Bousley : " Brady makes clear that post-plea legal changes to applicable penalties do not provide a basis for upsetting a guilty plea." (emphasis in original)). The Sixth Circuit has recognized and applied these principles, most prominently in In re Hanserd , 123 F.3d 922 (6th Cir. 1997), and Waucaush v. United States , 380 F.3d 251 (6th Cir. 2004).
Hanserd involved the Supreme Court's interpretation of 18 U.S.C. § 924(c) in Bailey v. United States , 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), which clarified the meaning of "use" of a firearm during and in relation to a drug trafficking crime. As the Sixth Circuit summarized: " Bailey held that the lower courts, this circuit included, had been sustaining convictions under § 924(c) for conduct that was not illegal." Hanserd , 123 F.3d at 924. The Circuit thus recognized the fundamental principle that "a guilty plea is involuntary where the defendant lacks knowledge of one of the elements required for conviction." Id. at 926. Hanserd held "that a guilty plea entered before the Court announced Bailey does not bar a defendant from later asserting that his conduct is shown by Bailey not to have been within the scope of § 924(c)." Id. at 928. The legal clarification at issue in Waucaush , for its part, concerned the scope of the phrase "affected interstate commerce" in the RICO statute, as affected by United States v. Morrison , 529 U.S. 598, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000), and Jones v. United States , 529 U.S. 848, 120 S.Ct. 1904, 146 L.Ed.2d 902 (2000). See 380 F.3d at 258.
The crux of the issue, as the Court perceives it, is whether a clarification of law as to a portion of one element of the offense of conviction compels judgment vacation if the facts Defendant admitted establish a valid basis for a plea in light of the clarification. The answer, as case law (principally Hanserd and Waucaush ) clearly indicates, is no.
First, consider Hanserd. In the case, "there [wa]s no indication that the necessary connection under Bailey between Hanserd's drug offense and his guns existed." 123 F.3d at 927. "There was no evidence that Hanserd was engaged in any substantive drug crime while he carried the guns; when the police arrested him on these two occasions they found no drugs." Id. Thus, the alternative § 924(c)"carry prong" could not "support either of" Hanserd's convictions, and the plea was therefore invalid. Id.
In fact, the Sixth Circuit explicitly recognized that other Circuits (and itself) had "uph[e]ld[ ]" pre- Bailey plea "conviction[s] on other grounds." 123 F.3d at 928. Repeating the Sixth Circuit's citation in Hanserd for that proposition: "See United States v. Riascos-Suarez , 73 F.3d 616, 623 (6th Cir.) (on direct appeal upholding conviction following pre- Bailey guilty (Alford ) plea because evidence could support conviction under 'carry' prong of § 924(c) ), cert. denied , 519 U.S. 848, 117 S.Ct. 136, 136 L.Ed.2d 84 (1996) [, abrogation on other grounds recognized by United States v. Abboud , 441 Fed.Appx. 331, 336 (6th Cir. 2011).] See also United States v. Mitchell , 104 F.3d 649, 652 (4th Cir. 1997) (rejecting, on basis of Rule 11, *676 government's argument that guilty plea is unassailable but finding adequate factual basis for guilty plea)." Id. (footnote explaining Alford omitted). Indeed, Mitchell upheld the validity of the guilty plea because there was adequate evidence showing that Mitchell "carried" the firearm even though "the evidence developed as the factual basis for the guilty plea is insufficient to support a conclusion that he 'used' a firearm within the meaning of § 924(c)(1) [.]" 104 F.3d at 652-54. Riascos-Suarez presents an analogous circumstance. 73 F.3d at 622-24. The reasoning in Mitchell and Riascos-Suarez forecloses the possibility that a legal clarification alone yields plea invalidity. If it did, the Sixth Circuit would have been required to vacate Defendant Riascos-Suarez's conviction so that the district court could accurately explain Bailey 's interpretation of § 924(c), and the Fourth Circuit would have done the same for Defendant Mitchell. Rather, the facts that Riascos-Suarez and Mitchell admitted provided a valid basis for their pleas, even in light of Bailey , and the Circuits accordingly upheld plea validity.[14]
Waucaush is equally applicable, by analogy. "[B]ecause [Waucaush] had an incorrect understanding of the reach of RICO's requirement that the enterprise 'affect interstate commerce,' " the Sixth Circuit explained, "Waucaush pled guilty to conduct which was simply not a federal crime." 380 F.3d at 258. "This type of misunderstanding-a misconception about the statute's legal scope that results in the defendant pleading guilty to conduct which was not a crime -typifies an unintelligent guilty plea." Id. (emphasis added). Indeed, the Sixth Circuit's focus, even in light of a possible legal clarification, was on whether "the facts ... satisf[ied] th[e applicable] element[.]" 380 F.3d at 259 (emphasis added). At bottom, "Waucaush mistakenly believed that the conduct to which he was admitting satisfied each element of the statute under which he was charged." Id. at 260 (emphasis added). Instead, the "facts to which Waucaush ... admitted ... ma[d]e him actually innocent of violating RICO." Id. "The only change" came "from the legal significance of those facts[.]" Id. "Because Waucaush's misunderstanding of the law led him to plead guilty to conduct which the law had not made a crime," the Sixth Circuit held, "his plea was unintelligent[.]" Id. at 263.[15]
*677 Not so with Conley. Per the Court's discussion in Part III.A, unlike in Waucaush , the facts Conley admitted easily continue to satisfy the crime's "official act" component post- McDonnell. Conley had no "mistaken[ ] belie[f] that the conduct to which he ... admit[ed]" satisfied the elements of the crime of conviction; rather, his belief was, and remains, accurate. McDonnell did not make innocent the corrupt behavior Conley confessed. Further, unlike in Hanserd , Conley admitted "the necessary connection under" McDonnell between his acts and the clarified crime. Conley has not demonstrated that "his conduct is shown by [ McDonnell ] not to have been within the scope of" the crime. Hanserd , 123 F.3d at 928 (emphasis added). To the contrary, there remains a firm factual basis for the continued validity of Conley's plea, unlike in Hanserd. Conley's case is analogous to Riascos-Suarez and Mitchell -which the Sixth Circuit explicitly recognized in Hanserd -where courts upheld plea validity in light of a legal clarification when the admitted facts continued to show a proper basis for the plea despite the clarifying event.[16]
McDonnell , the Court must note, dealt with the margins of honest services fraud-whether a politician's shapeless and informal support, meeting arrangement, and phone calls for a potential endeavor could, alone, qualify as official acts. McDonnell is important to those needing to know the precise boundaries of the crime, but Conley's behavior was heartland illegality untouched by the Supreme Court's finer elemental cartography. An elected public official taking kickbacks for doctoring bids and shepherding false bids through the procurement process presents conduct not clarified and not in need of clarification by McDonnell. This was straight graft, classic (though large-scale) palm greasing, and McDonnell matters not a whit to the legal analysis Conley faced at plea or would face now. The lawyers, the Court, and Conley all were well aware of the operative elements, no party proceeded on an erroneous foundation, and Conley did not plead guilty to a crime based on conduct later explained or defined by McDonnell as non-criminal.
Accordingly, per this discussion, the District Court should find no basis to invalidate Conley's plea[17] and, *678 thus, should deny § 2255 relief on this ground.
C. Ineffective Assistance of Counsel
In light of the Court's analysis in Parts III.A and III.B, the Court, after recounting the standard, easily dispatches Conley's lone ineffective assistance of counsel allegation.
When asserting an ineffective assistance claim, a movant must prove both deficient performance and prejudice. Strickland v. Washington , 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984) ; Campbell v. Bradshaw , 674 F.3d 578, 586 (6th Cir. 2012) ; Pough v. United States , 442 F.3d 959, 964 (6th Cir. 2006) (noting that a movant must prove ineffective assistance by a preponderance of the evidence). In order to prove deficient performance, a movant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland , 104 S.Ct. at 2064. A movant meets this burden by showing "that counsel's representation fell below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the circumstances." Id. at 2064-65. Judicial scrutiny of counsel's performance, however, is "highly deferential," featuring a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" Id. at 2065.
Deficient performance is considered constitutionally prejudicial only when "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 2064. In order to prove prejudice, a movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 2068. When evaluating prejudice, courts generally must take into consideration the "totality of the evidence before the judge or jury." Id. at 2069. "In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice." Lafler v. Cooper , 566 U.S. 156, 132 S.Ct. 1376, 1384, 182 L.Ed.2d 398 (2012).[18] In the sentencing context, ineffective assistance "can result in Strickland prejudice because any amount of additional jail time has Sixth Amendment significance." Id. at 1386 (internal quotation marks, alteration, and citation omitted).
Here, Conley satisfies neither Strickland element.
First -Conley has not demonstrated that his counsel deficiently performed. Conley's sole gambit is McDonnell -dependent: that, given McDonnell , "Conley's *679 counsel did not correctly advise him of what the Government had to prove to attain a conviction at trial." DE # 153-1, at 10.
This argument fails because counsel is generally not "constitutionally ineffective for failing to anticipate or foresee" a legal clarification. Nichols v. United States , 563 F.3d 240, 253 (6th Cir. 2009) (en banc ). Quite simply, an attorney does not transgress Strickland by "failing to anticipate [a future] Supreme Court ... holding" or for "lacking ... prescience to anticipate [an] eventual holding[.]" United States v. Burgess , 142 Fed.Appx. 232, 240 (6th Cir. 2005). Additionally, the Court "must assess the adequacy of [Conley]'s counsel's performance based on 'counsel's perspective at the time,' rather than 'in the harsh light of hindsight[.]' " Baker v. Voorhies , 392 Fed.Appx. 393, 400 (6th Cir. 2010) (citing Strickland ). Considering the required contemporaneous viewpoint, "counsel is not ineffective for failing to predict the development of the law." Thompson v. Warden , 598 F.3d 281, 288 (6th Cir. 2010) (citing cases); see also, e.g. , Alcorn v. Smith , 781 F.2d 58, 62 (6th Cir. 1986).
Here, of course, McDonnell (which vacated the Fourth Circuit's decision) did not exist as a source of law or interpretive aid at the time of rearraignment, sentencing, or even the Sixth Circuit's decision. Counsel was not ineffective by not foreseeing McDonnell or its clarification of the meaning of "official act" and, thus, for not advising Conley of the interpretation the Supreme Court would later employ. Nichols , 563 F.3d at 253 ; Burgess , 142 Fed.Appx. at 240 ; Thompson , 598 F.3d at 288. The Court finds no merit in the assertion that counsel was ineffective for not predicting a Supreme Court holding concerning a topic on which a unanimous Fourth Circuit panel similarly lacked insight. See United States v. McDonnell , 792 F.3d 478 (4th Cir. 2015), vacated and remanded by 136 S.Ct. 2355. Accordingly, application of controlling precedent dictates that Conley's counsel did not deficiently perform as to advice on the then-nonexistent McDonnell analysis.
Second -Conley suffered no prejudice.
Regardless of the posture as to performance, per the merits analysis in Parts III.A and III.B, Conley foundationally suffered no prejudice; this independently precludes a finding of ineffectiveness under the Strickland rubric. Thus, even if counsel had predicted and perceived McDonnell 's"official act" interpretation, and advised Conley of that divination, there is utterly no indication in this record that the result of the proceeding would in any way have been different. Rather, the facts Conley admitted-and does not seek to impeach now-fully establish a valid basis for a plea post- McDonnell. Even if counsel had advised Conley of the McDonnell interpretation, McDonnell does not impact the conclusion as to Conley, and Conley's plea still properly supports a valid conviction.[19] Accordingly, as an independent basis to find no Strickland ineffectiveness, Conley suffered no prejudice from ignorance of McDonnell 's analysis, which shed light unnecessary to Conley's crime, at the time of the plea.
For these reasons, Conley is entitled to no § 2255 relief on this ground.
D. "Official Acts" Sentencing Enhancement
Conley's final volley is an "alternative" argument-that "[e]ven if the Court does *680 not permit [him] to withdraw the guilty plea, it must correct an obvious error in the calculation of [his] sentencing guideline range." DE # 153-1, at 18. Namely, Conley targets "a four-level enhancement for committing 'official acts' in exchange for the payments." Id.[20] The entirety of the argument is one cursory sentence: that in light of McDonnell , "Conley no longer qualifies for this enhancement." Id.
Based on the prior merits analysis, the Court likewise rejects this sentencing enhancement argument. Simply put, because Conley admitted facts that continue to qualify as "official acts" post- McDonnell , per the above analysis, the enhancement continues to properly apply. Conley committed the crime of conviction as an elected public official, warranting application of § 2C1.1(b)(3). Movant is thus entitled to no § 2255 relief on this ground.
E. Evidentiary Hearing
Conley does not request an evidentiary hearing. Nevertheless, the Court must hold one unless "the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Further, no hearing is necessary "where the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." Huff v. United States , 734 F.3d 600, 607 (6th Cir. 2013) (quoting Arredondo v. United States , 178 F.3d 778, 782 (6th Cir. 1999) ) (internal quotation marks removed). Conley's claims do not warrant a hearing; the § 2255 motion filings and record of the case conclusively show, for the reasons stated above, that Conley's arguments fail. There are no contested factual issues in this context (where the motion raises only legal questions concerning McDonnell 's application to the case) that justify a hearing. The record, which needs no further development, forecloses relief.
IV. CERTIFICATE OF APPEALABILITY
A Certificate of Appealability may issue where a movant has made a "substantial showing of the denial of a constitutional right." See 28 U.S.C. § 2253(c)(2). This standard requires a movant to demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel , 529 U.S. 473, 120 S.Ct. 1595, 1604, 146 L.Ed.2d 542 (2000) ; see also Miller-El v. Cockrell , 537 U.S. 322, 123 S.Ct. 1029, 1039-40, 154 L.Ed.2d 931 (2003) (discussing development of standard). The reviewing court must indicate which specific issues satisfy the "substantial showing" requirement. See 28 U.S.C. § 2253(c)(3) ; Bradley v. Birkett , 156 Fed.Appx. 771, 774 (6th Cir. 2005) (noting requirement of "individualized assessment of ... claims") (citing Porterfield v. Bell , 258 F.3d 484, 487 (6th Cir. 2001) ). For dismissal on procedural grounds, as to when a Certificate of Appealability should issue, the movant must show that "jurists of reason would find it debatable whether the *681 petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack , 120 S.Ct. at 1604. Movant has not made a "substantial showing" as to any claimed denial of rights; per the above analysis, the McDonnell , plea validity, IAC, and all related claims conclusively fail. Reasonable jurists would not find the Court's determinations debatable. Accordingly, the Court recommends that the District Court entirely deny a Certificate of Appealability.
V. RECOMMENDATION
For the reasons discussed, the Court RECOMMENDS that the District Judge wholly DENY § 2255 relief (DE # 153) and issue NO Certificate of Appealability.
* * * * *
The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute. See also Rule 8(b), Rules Governing Section 2255 Proceedings for the United States District Courts. Within fourteen days after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, de novo , by the District Court. Failure to make a timely objection consistent with the statute and rule may, and usually does, result in waiver of further appeal to or review by the District Court and Court of Appeals. See Thomas v. Arn , 474 U.S. 140, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985) ; United States v. Walters , 638 F.2d 947, 950 (6th Cir. 1981).

Conley filed a Notice of Supplemental Authority [R. 165] more than four months after filing his objections to the Magistrate's Recommended Disposition. In that Notice, Conley cites to Lee v. United States , --- U.S. ----, 137 S.Ct. 1958, 198 L.Ed.2d 476 (2017) and United States v. Silver , 864 F.3d 102 (2nd Cir. 2017). The Court acknowledges that Lee and Silver were pending during the timeframe in which Conley had to file objections to the Recommended Disposition. Because Conley filed timely objections to the Recommended Disposition, and because Conley filed his Notice prior to the filing of this Memorandum Opinion & Order, the Court will address Conley's objections with reference to Lee and Silver for the purpose of building a complete record.

18 U.S.C. § 201(a)(3) defines an "official act" as "any decision or action on any question, matter, cause, suit, proceeding or controversy, which may at any time be pending, or which may by law be brought before any public official, in such official's official capacity, or in such official's place of trust or profit."

In his Notice of Supplemental Authority, Conley cites to United States v. Silver , 864 F.3d 102 (2d Cir. 2017), for the assertion that an official act cannot encompass "any action taken or to be taken under color of official authority," as it is overbroad and criminalizes "conduct which is not, under McDonnell , criminal." [R. 165 at 3.] Because this Memorandum Opinion and Order narrows in on the conduct satisfying a post-McDonnell definition of official act, the Court need not address the merits of Silver in relation to Conley's § 2255 claims.

More precisely, Conley was indicted in December 2013. He plead guilty in August 2014 and was sentenced in January 2015. Governor Robert McDonnell was indicted in January 2014. See Indictment, United States v. McDonnell , No. 14-12 (E.D. Va. Jan. 21, 2014), ECF No. 1. Gov. McDonnell's case resulted in a jury verdict in September 2014, and McDonnell, like Conley, was sentenced in January 2015. See Jury Verdict, United States v. McDonnell , No. 14-12 (E.D Va. Sept. 4, 2014), ECF No. 495; Judgment, United States v. McDonnell , No. 14-12 (E.D. Va. Jan. 6, 2015), ECF No. 624.

This argument is verbatim the argument articulated by Conley in his initial § 2255 Motion. [R.153-1 at 18.] In raising the objection to the Magistrate's Recommended Disposition, Conley provides no additional substantive support for his argument. However, the Court addresses this objection in order to build a thorough record.

The 2014 Guidelines Manual was properly used in determining Conley's sentencing guideline range. Pursuant to U.S.S.G. § 1B1.11, the Guideline Manual in effect at the time a defendant is sentenced is to be used in determining the applicable sentencing guideline range. However, if the use of that Manual would offend ex post facto principles, the Manual in effect at the time the crime of conviction was committed should be used. The Court has reviewed the 2014 Guideline Manual, the Manual in effect at the time of Conley's sentencing, and determined that Manual did not violate the ex post facto clause. Conley's offense level was properly calculated under U.S.S.G. § 2C1.1 due to his conviction under 18 U.S.C. § 1341.

See Skilling v. United States , 561 U.S. 358, 130 S.Ct. 2896, 2931, 177 L.Ed.2d 619 (2010) (labeling a kickback scheme "a paradigmatic" example of honest-services fraud and as within the "core" of the doctrine).

The Court notes, at the outset, consideration of the procedural default doctrine and its application in these circumstances. "Section 2255 is not a substitute for a direct appeal, and thus a defendant cannot use it to circumvent the direct appeal process." Regalado v. United States , 334 F.3d 520, 528 (6th Cir. 2003). The procedural default doctrine bars "claims that could have been raised on direct appeal, but were not[.]" Ray v. United States , 721 F.3d 758, 761 (6th Cir. 2013). A 2255 movant generally need not petition the Supreme Court for a writ of certiorari to avoid a default-based dismissal. See English v. United States , 42 F.3d 473, 479 (9th Cir. 1994) ("The only question we must face, then, is whether [Defendants] committed a procedural default by failing to raise their Gomez [v. United States , 490 U.S. 858, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989) ] claims in petitions for certiorari[.] We find no rule which required the petitioners to raise these claims in such a manner. (This is not surprising, because the filing of a petition for certiorari ... is ordinarily unnecessary to exhaust one's remedies)."); Clay v. United States , 537 U.S. 522, 123 S.Ct. 1072, 1076, 155 L.Ed.2d 88 (2003) (contemplating that direct review can conclude without petitioning for certiorari); Sanchez-Castellano v. United States , 358 F.3d 424, 426-27 (6th Cir. 2004) (same).
Conley bases his motion, though, entirely on a Supreme Court decision (McDonnell ) issued between the time of the Sixth Circuit's dismissal of his case and the expiration of his period to petition for certiorari. Because Conley's appeal was not yet final when the Supreme Court decided McDonnell (as he readily admits and indeed embraces), is a McDonnell claim one "that could have been raised on direct appeal, but w[as] not[?]" Ray , 721 F.3d at 761. After all, when McDonnell was decided, Conley still could have petitioned the Supreme Court for certiorari, asking the Justices to vacate his conviction in light of the new case, but he did not. The Government does not advocate for default, and the parties do not brief this topic. In the circumstances, the Court notes the issue but declines to raise default sua sponte or explore the argument further. Elzy v. United States , 205 F.3d 882, 886 (6th Cir. 2000) ("[T]he Government's failure to raise the default may operate as a forfeiture of its right to defend on that ground[.]"). Indeed, as already noted, petitioning for certiorari is not a necessary part of concluding direct appeal.
Moreover, courts have permitted merits consideration of § 2255 motions in similar circumstances. See, e.g. , United States v. Becker , 502 F.3d 122, 128 (2d Cir. 2007) (affirming the district court's grant of a § 2255 motion although "the change of law on which Becker relie[d] occurred after his direct appeal was decided but before his time to petition the Supreme Court for certiorari had expired") (citing Davis v. United States , 417 U.S. 333, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974) ); English , 42 F.3d at 474 (reaching the merits of § 2255 motions based on a Supreme Court decision issued "[w]hile the cases were still pending on direct appeal" but that the defendants did not raise in petitions for certiorari and instead "chose to pursue ... in petitions for collateral relief under 28 U.S.C. § 2255").

Further, the waiver would not bar, by its terms, a Strickland claim.

"As a general matter, convictions become final upon conclusion of direct review. When a federal criminal defendant takes a direct appeal to the court of appeals, his judgment of conviction becomes final for § 2255 purposes upon the expiration of the 90-day period in which the defendant could have petitioned for certiorari to the Supreme Court, even when no certiorari petition has been filed." Sanchez-Castellano , 358 F.3d at 426. The Supreme Court decided McDonnell within the 90-day period for Conley to petition for certiorari (i.e. , before his conviction was final).

See also In re Lott , 838 F.3d 522, 523 (5th Cir. 2016) (per curiam ) (holding McDonnell not retroactive to cases on collateral review).

Use of the § 201 definitions to delineate honest services mail fraud came via stipulation in the McDonnell district court. Still, the Supreme Court product resulted from a blend of the statutes, the Court's precedent, and, importantly, the quest for a construction with constitutional contours. See McDonnell , 136 S.Ct. at 2367-68. Thus, McDonnell , though confronting a question postured in some sense on party agreement, announced an answer that definitively resolves the meaning of "official act" for purposes of federal bribery and, derivatively, honest services mail fraud.

District courts have referred to the first prong as the "identification" requirement and the second as the "performance" requirement. United States v. Jones , 207 F.Supp.3d 576, 580-81 (E.D.N.C. 2016) ; United States v. Lee , No. 1:15CR445, 2016 WL 7336529, at *2 nn.2 & 3 (N.D. Ohio Dec. 19, 2016).

At rearraignment, Conley confirmed, under oath, that all facts expressed in the plea agreement were true. DE # 136, at 28. He further confessed to, for example, accepting money "wrongfully." Id. at 31; id. at 29 ("I done [sic] it wrongfully."). Movant attempts no impeachment or repudiation of the facts he previously admitted here.

Conley admitted to "rigging purportedly competitive bidding processes." DE # 124, at ¶ 3(b). The word "rig," in this context, means "to manipulate fraudulently." Random House Webster's Unabridged Dictionary 1656 (2d ed. 2001).

Each Kentucky county has a Fiscal Court, of which the Judge/Executive is a member. Ky. Const. § 144. The Judge/Executive is "the chief executive of the county" and has the power and obligation to "perform all the duties of an executive and administrative nature vested in, or imposed upon, the county or its fiscal court by law, or by agreement with any municipality or other subdivision of government, and such additional powers as are granted by the fiscal court." KRS 67.710. One specific responsibility is to "execute all contracts entered into by the fiscal court." KRS 67.710(1). The Judge/Executive also must "[f]urnish the fiscal court with information concerning the operations of the county departments, boards, or commissions, necessary for the fiscal court to exercise its powers[,]" KRS 67.710(3), "prepare and submit to the fiscal court an annual budget and administer the provisions of the budget when adopted by the fiscal court," KRS 67.710(5), and "[k]eep the fiscal court fully advised as to the financial condition and needs of the county." KRS 67.710(6). The Fiscal Court, for its part, must "[a]ppropriate county funds" and, "[a]s needed, cause the construction, operation, and maintenance of all county buildings and other structures, grounds, roads and other property." KRS 67.080(2)(a) & (b).
The Sixth Circuit succinctly summarized: "Counties are governed by fiscal courts, which are composed of the county judge/executive and either three commissioners or three to eight justices of the peace. Ky. Const. § 144. The judge/executive, when acting separately from the fiscal court, holds the executive and administrative powers of the county, and the fiscal court exercises the legislative powers of the county. Ky. Const. § 125 ; Ky. Rev. Stat. §§ 67.710, 67.080." Boyd Cnty. ex rel. Hedrick v. MERSCORP, Inc. , 614 Fed.Appx. 818, 822 (6th Cir. 2015).

Conley's suggestion that a "public official must possess decision making authority over a 'question, matter, cause, suit, proceeding or controversy,' " DE # 153-1, at 16, is flatly wrong. For over a century, the Supreme Court has rejected just such a limitation:
A public official may also make a decision or take an action on a 'question, matter, cause, suit, proceeding or controversy' by using his official position to exert pressure on another official to perform an 'official act.' In addition, if a public official uses his official position to provide advice to another official, knowing or intending that such advice will form the basis for an 'official act' by another official, that too can qualify as a decision or action for purposes of § 201(a)(3). See United States v. Birdsall , 233 U.S. 223, 234, 34 S.Ct. 512, 58 L.Ed. 930 (1914) (finding 'official action' on the part of subordinates where their superiors 'would necessarily rely largely upon the reports and advice of subordinates ... who were more directly acquainted with' the 'facts and circumstances of particular cases').
McDonnell , 136 S.Ct. at 2370 (emphasis in original). In Birdsall , for example, the official with "decision making authority" on the clemency question was the President, but the Supreme Court held: "The action of these [subordinate] officers in thus advising the President plainly would be official action[.]" 34 S.Ct. at 516 ; see also, e.g. , United States v. Gjieli , 717 F.2d 968, 976 (6th Cir. 1983) ("In Krogmann v. United States , 225 F.2d 220, 225 (6th Cir. 1955) the Court held that § 201 was applicable where the advice and recommendation of a public official would be influential even though the public official did not have the authority to make the final decision.").
Remember that McDonnell specifically deemed "a decision or action to initiate a research study-or a decision or action on a qualifying step, such as narrowing down the list of potential research topics" to "qualify as an 'official act.' " 136 S.Ct. at 2370. This shows that Conley need not have had the final say over project award. Rather, he oversaw a tainted bid process by which he fabricated the bid-basis award, literally changing the numbers to "ensure that [his co-conspirator's prices] appeared slightly lower than the other contractor's prices." DE # 124, at ¶ 3(c). He then "selected" the low bidder, his co-conspirator, and under "fraudulent pretenses ... later presented his selection for approval by the Morgan County Fiscal Court." Id. at ¶ 3(c) & (d). At the barest minimum, Conley made decisions and took actions on the qualifying step of contract placement when he created the illusion that PBTHNOJJ was the low bidder and presented that falsity as the basis for Fiscal Court approval.

Additionally, although Conley raises no such issue, the Court notes, for completeness, that this case presents none of the Supreme Court's expressed federalism or overreach concerns. See McDonnell , 136 S.Ct. at 2372-73 ; see also, e.g. , United States v. Reed , No. 15-100, 2016 WL 6946983, at *5-*13 (E.D. La. Nov. 28, 2016) (extensively evaluating these concerns post-McDonnell ). For the reasons explained, Conley's actions plainly fit within McDonnell 's bounded definition of "official acts." Accordingly, the case raises no comity concerns, and, again, Conley does not assert to the contrary.

The Court has fully reviewed the rearraignment and sentencing transcripts. DE ## 136 & 139. The Sixth Circuit previously reviewed the rearraignment transcript and found "that the district court complied with the provisions of Rule 11 [.]" DE # 152, at 2. Conley agreed that the Government could satisfactorily prove the elements of the offense. DE # 136, at 26-27. The AUSA summarized the elements, but there was no particular discussion at rearraignment of the meaning of "official act."

The Court views as somewhat analogous, although not critical to the outcome here, the well-settled principle that "post-plea changes cannot render an otherwise valid plea involuntary or unknowing." United States v. Whitsell , 481 Fed.Appx. 241, 243 (6th Cir. 2012). "The possibility of changes in the law is simply one of the risks allocated by the parties' plea agreement." United States v. Ryerson , 502 Fed.Appx. 495, 498 (6th Cir. 2012) (internal alterations removed). "[W]here developments in the law later expand a right that a defendant has waived in a plea agreement, the change in law does not suddenly make the plea involuntary or unknowing or otherwise undo its binding nature. A valid plea agreement, after all, requires knowledge of existing rights, not clairvoyance." United States v. Bradley , 400 F.3d 459, 463 (6th Cir. 2005) ; see also, e.g. , In re Garner , 664 Fed.Appx. 441, 442-44 (6th Cir. 2016). Applied here, "[h]ad [Conley] predicted the outcome of [McDonnell ], it is true, he might not have used his rights to challenge his sentence as bargaining chips in the plea negotiation. But [Conley]'s lack of clairvoyance cannot undo his decision to [plead guilty] or waive the right to attack his sentence collaterally." Id. at 443. "All that matters is that the [plea] was knowing; it need not be omniscient." Id.

See also Pugh v. Sheldon , No. 1:10-cv-1648, 2011 WL 8185586, at *11 (N.D. Ohio July 8, 2011) (reflecting the same comparative analysis: "In Bousley and Waucaush , the defendants essentially plead guilty to conduct that was later determined to be insufficient to satisfy the essential elements of the crimes ." (emphasis added)). Here, as the Court finds, Conley did not plead to conduct later determined to be insufficient to satisfy the crime's essential elements. Instead, his admitted conduct remains sufficient post-McDonnell to satisfy all essential elements of the offense of conviction. Conley pleaded "guilty to conduct that was, and still is, a crime." United States v. Oakes , 411 F.Supp.2d 1, 5 (D. Me. 2006) (similarly distinguishing Hanserd and Waucaush ).

The District of Maine fully recognized the same principle, denying § 2255 relief using the following reasoning: "[A]lthough [Ashcroft v. ] Free Speech Coalition [535 U.S. 234, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002) ] narrowed the scope of the conduct that was illegal under the CPPA, the conduct to which Oakes admitted engaging continued to be a crime under both of the remaining constitutional definitions of 'child pornography. ' " Oakes , 411 F.Supp.2d at 5 (emphasis added) (rejecting reliance on Hanserd and Waucaush to reach an opposite conclusion).

To the extent Conley attempts an independent, abbreviated attack on the appeal and collateral attack waiver, he only addresses the issue briefly, in tandem with his larger assault on the plea itself. See DE # 153-1, at 9-10. Accordingly, the Court does not unduly linger on the topic. A defendant may validly waive his right to appeal and collaterally attack a conviction. See Davila v. United States , 258 F.3d 448, 450-51 (6th Cir. 2001) ; Watson v. United States , 165 F.3d 486, 489 (6th Cir. 1999). "To be a valid waiver the defendant must enter into the waiver agreement knowingly, intelligently, and voluntarily." Davila , 258 F.3d at 451 ; Watson , 165 F.3d at 489. Additionally, as stated above, a "change in law does not suddenly make the plea involuntary or unknowing or otherwise undo its binding nature." Bradley , 400 F.3d at 463 (enforcing an appellate-review waiver). Courts do not, however, enforce waivers in "cases where a defendant argues that his plea was not knowing or voluntary, or was the product of ineffective assistance of counsel[.]" In re Acosta , 480 F.3d 421, 422 (6th Cir. 2007). Because Conley argues that his plea is invalid and because his motion includes an IAC count, the Court does not enforce the collateral attack waiver here (but Conley also earns no substantive relief). But see DE # 152 (Sixth Circuit Order, pre-McDonnell , enforcing Conley's appellate-review waiver).

Lafler and some other cases cited herein were § 2254 cases, but their analyses also apply to a § 2255Strickland theory. See Winkler v. United States , Nos. 3:08-cr-014, 3:10-cv-210, 2013 WL 4494971, at *2 (E.D. Tenn. Aug. 20, 2013) (A § 2254 case's "reasoning, nevertheless, applies to cases filed by federal prisoners under 28 U.S.C. § 2255 because §§ 2254 and 2255 are counterparts of each other and the law applicable to one generally applies to the other.").

Notably, Conley does not assert that he would have refused a plea and insisted on going to trial if counsel had advised him of the McDonnell interpretation. See DE # 153-1, at 10. Conley attaches no affidavit or proof whatsoever. This likewise forecloses any suggestion of prejudice.

Conley does not cite to the record location of this alleged enhancement or a precise Guideline provision undergirding it. The plea agreement and presentence report reflect a 4-level enhancement pursuant to U.S.S.G. § 2C1.1(b)(3)"because the offense involved an elected public official." DE ## 124, at ¶ 5(f); 134, at ¶ 19. The Government, though, does not challenge the existence of the enhancement. DE # 157, at 13 (referencing "the four-level enhancement for committing official acts"). Section 2C1.1(b)(3), as the plea agreement indicates, facially requires merely the "involve[ment of] an elected public official[.]" Judge/Executive Conley was certainly such a person. DE # 124, at ¶ 3(a) ("The Defendant was elected[.]").